**CATERPILLAR AMERICAS COMPANY,**
**Libelant,**

v.

**S.S. SEA ROADS, her engines, etc., and**
**Sea Road Shipping Company,**
**Respondents.**

**No. 63–149.**

United States District Court
S. D. Florida,
Miami Division.

July 15, 1964.

Frank J. Marston and Fowler, White, Gillen, Humkey & Trenam, Miami, Fla., for libelant.

Roland Parent, and Smathers & Thompson, Miami, Fla., for respondents.

FULTON, District Judge.

This admiralty case involves a libel in rem and in personam for cargo damage resulting when Libelant's tractor was dropped into the water while being unloaded from the Respondent vessel. This Court has jurisdiction over the parties to and the subject matter of this case.

There is no controversy concerning the essential facts of the accident. Libelant delivered the tractor and assorted parts to the Respondent, Sea Road Shipping Company, on or about July 10, 1963, for carriage to Nassau, Bahamas. On July 15, 1963, the tractor, while being unloaded, was dropped into salt water near the dock in Nassau. The evidence clearly proves, and Respondent conceded at the end of the trial, that the unloading was performed negligently; and that this negligence constituted a breach of contract to safely deliver the tractor.

The real issue in the case is whether Section 1304(5) of Title 46, United States Code, precludes Libelant from any recovery in excess of $500.00, notwithstanding that the damage to the tractor was greatly in excess of such sum.

The statute involved is part of the Carriage of Goods by Sea Act, and it sets forth certain limitations on liability for cargo damage. Section 1304(5) provides:

"Neither the carrier nor the ship shall in any event be * * *
liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500.00 per package * * * or in case of goods not shipped in packages, per customary freight unit * * * unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

"By agreement between the carrier * * * and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained. * * * *"

Neither of the statutory exceptions applies in the present case. The parties did not specifically agree to any higher maximum; and the shipper did not declare the value of the goods on the bill of lading. It is true that clause 18 of the finely printed provisions on the back of the bill of lading contains the recitation:

"The Shipper declares and agrees that, unless a different valuation is stated in this bill of lading and freight paid thereon as per tariff, the value of said goods is not more than 10¢ per hundred weight. * * *"

However, such clauses in bills of lading have been construed to be *limitation* clauses rather than true *valuation* clauses; and it has been held that such clauses are invalid under section 1304 (5), since they attempt to lessen the maximum prescribed by the statute. The Bill, 55 F.Supp. 780 (D.C.Md.1944); The Steel Inventor, 35 F.Supp. 986 (D.C. Md.1940).

The issue in the present case is thus narrowed down to the question of the proper application of the $500.00 maximum prescribed by 46 U.S.C. § 1304(5),

to the particular facts established by the evidence.

The tractor was delivered to, and shipped by, Respondent, Sea Road Shipping Company, in a "loose" condition. That is, it was not boxed, crated or put on skids. It was driven upon the Respondent vessel under its own power, and was being removed from the vessel in Nassau by the same method, when the unloading ramp fell and dropped it into the water.

■ It is clear upon these facts that the tractor was not a "package" within the meaning of the first part of section 1304(5). Gulf Italia Company v. American Export Lines, 263 F.2d 135 (2d Cir. 1959). The Respondent company does not contest this conclusion. Respondent does assert, however, that the tractor and its accompanying parts were a "customary freight unit", within the meaning of the second part of section 1304 (5).

■ With respect to the words "customary freight unit", the authorities are conclusive that this phrase refers to the unit upon which the charge for freight is computed and not to the physical shipping unit. See Gulf Italia Company v. American Export Lines, supra, and cases cited therein. As thus construed, the statute gives the court the task of determining what unit was actually used by the carrier for computing the freight charge on the shipment in question. Under the statute the freight unit, if one exists, will control the question of limitation of liability, unless the freight unit employed was a mere sham, and, therefore, not a "customary" unit within the meaning of the statute. Gilmore and Black, The Law of Admiralty, § 3–46.

As already noted, the Respondent carrier contends that the freight unit in this case was the entire tractor and its accompanying parts. The Libelant contends that hundredweight units constituted the freight unit.

Under Respondent's contention, recovery would be limited to a $500.00 maximum for the entire damage suffered. Under Libelant's contention, the maximum recovery would be $500.00 multiplied by the number of hundredweight units involved in the shipment.

The bill of lading is blank with respect to the freight rate. It shows the weight of the tractor as 54,097 pounds and the weight of the accompanying boxes and bundles of parts and accessories as 14,344 pounds—for a total shipment weight of 68,421 pounds. At the bottom of the face of the bill of lading there is an entry labelled "Total Steamship Freight" in the amount of $875. No itemization, or other breakdown of the components of this charge, is given.

The managing agent for the carrier testified that the $875 charge was computed on a "lump-sum" basis for the entire shipment, based on past experience with similar shipments. He denied that any hundredweight unit was used, and testified that the weights of the items shipped were listed on the bill of lading merely as a routine business practice and also to provide information required by customs authorities of the Bahamas and the United States. He also testified that the $875 charge included certain dock charges relating to movement in the dock area of the tractor and parts. These charges were paid to third parties by the carrier and absorbed into the total $875 freight charge.

Libelant concedes that the face of the bill of lading does not show that the $875 charge was computed on the basis of hundredweight units. However, Libelant contends that the entire bill of lading is expressly made subject to the printed clauses on the reverse side, and that certain portions of clause 18 thereof do support the contention that hundredweight freight units were employed.

Libelant emphasizes the following language from clause 18:

"It is hereby mutually agreed that the shipper of the goods has been given a choice of freight rates as per tariff published, for the trans-

portation of the goods covered by this bill of lading and that the freight on the goods is based on the declared value of said goods. The shipper declares and agrees that, unless a different valuation is stated in this bill of lading and freight paid thereon as per tariff, the value of said goods is not more than 10¢ per hundredweight. * * "

From this language, Libelant concludes that the parties indicated that they were treating the shipment in terms of hundredweight units.

There are two answers to Libelant's reliance on said clause 18. *First*, it has already been shown that this type of clause has been construed to be simply a formalistic recitation to achieve a limitation of liability while masquerading as a valuation clause. The Bill, supra. It is obvious from the wording of the first sentence itself that it is just a form provision which is unrelated to the actual transaction. That sentence states that the freight is based on the declared value of the goods, but the facts clearly establish that no such value was declared. *Second*, the tariffs referred to in clause 18 do not give any hundredweight rate which could have been used to compute the $875 charge on the shipment in question. There was a total of 684 hundredweight units involved, which would require a tariff of $1.28 per hundredweight to support a $875 total charge. The tariffs used by Respondent do not show any such rate. The only category on the tariff which conceivably could have covered the tractor and parts was the "general cargo" listing with a rate of $1.69 per hundredweight.

■ The Court concludes on the basis of all the evidence that the customary freight unit employed in the shipment in question was the entire tractor and accompanying parts. This being so, the recovery must be limited to $500 regardless of the harshness or seeming illogic of such a result. Petition of Isbrandtsen, 201 F.2d 281 (2d Cir. 1953).

 The statute was designed to protect the shipping industry and to throw the burden to the shipper to declare the value of the goods and pay a higher tariff if he wished to have higher liability on the part of the carrier. Mitsubishi International Corp. v. S.S. Palmetto State, 311 F.2d 382, 94 A.L.R.2d 1412 (2d Cir. 1962).

In view of this ruling, the Court need not determine the exact amount of damage suffered by Libelant, except to find that the damage was at least $500.00.

Final decree shall be entered for Libelant in the amount of $500.00 plus costs.

This opinion shall serve as findings of fact and conclusions of law.