**EATON CORPORATION (CONSTRUCTION EQUIPMENT DIVISION) and E. R. I. M., S. A., Plaintiffs,**

v.

**S. S. "GALEONA", her engines, boilers, etc.**

v.

**COMPANIA TRASATLANTICA ESPANOLA, S. A., Defendant.**

**No. 78 Civ. 135 (CHT).**

United States District Court, S. D. New York.

July 26, 1979.

Bigham, Englar, Jones & Houston, New York City, for plaintiffs; Robert J. Williams, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant; Harold V. Higham, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Eaton Corporation (Construction Equipment Division) ("Eaton") and E.R.I.M., S.A. sued the S.S. GALEONA and Compania Trasatlantica Espanola, S.A. ("Spanish

Line") for damages that allegedly occurred to an industrial tractor while being shipped aboard the S.S. GALEONA. Eaton now moves for partial summary judgment, seeking an order striking paragraph 17 of the Answer, which alleges that any recovery must be based on the terms of the Bill of Lading and/or the provisions of § 4(5) of the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1304(5) [hereinafter cited only as COGSA § 4(5)], settling Spanish Line's potential liability under section 4(5) at $500 per customary freight unit, and determining that the unboxed tractor equaled 67 such units. Spanish Line cross-moves for partial summary judgment, seeking an order upholding its affirmative defense of limited liability under COGSA § 4(5) and determining that the entire shipment equaled no more than 18 customary freight units. For the reasons given below, the Court grants and denies each motion in part: it upholds Spanish Line's affirmative defense under COGSA § 4(5), but determines that the tractor contained a total of 67 customary freight units and that, accordingly, Spanish Line's liability will be limited to the lesser of $33,500 or the actual damages, if any, to the tractor.

### Background

Eaton, by its agent, United States Forwarding Corporation ("Forwarding Corp."), arranged for the delivery to Spanish Line of one unboxed tractor, one tractor bucket, and one box of tractor parts for shipment from New York to Bilboa, Spain. The tractor, bucket, and parts were carried aboard the S.S. GALEONA under Bill of Lading # 44, dated Nov. 17, 1972. Sometime during the voyage the tractor was severely damaged; the bucket and parts arrived undamaged. Eaton and the consignee decided to return the tractor to the United States for repairs. According to the Survey Schedule and Repair Estimate provided by Eaton, Exhs. 4, 5 to Notice of Motion, the total damages amounted to $31,492.45.[1]

---

1. Eaton, in its moving papers, prays for $31,-492.65. Affidavit of Thomas J. Patterson, sworn to Sept. 27, 1978, ¶ 8. Presumably the additional $.20 over the damage estimates is for the ravages of inflation.

When the unboxed tractor was returned to Eaton's plant, the plaintiff found it to be beyond repair and thus sold it "as is, where is." Affidavit of Thomas J. Patterson, sworn to Sept. 27, 1978, ¶ 4 ("Patterson Aff.").

Eaton contends that the freight for the shipment was calculated by weight and that the customary freight unit for weight, by Spanish Line's Tariff and by the custom in the trade, is allegedly 40 cubic feet. The 2862.2 cubic feet of the tractor, when divided by 40 cubic feet, yields approximately 67 customary freight units. 67 customary freight units, when multiplied by the $500 limitation, equals $33,500. Accordingly, Spanish Line's liability for the damage to the tractor would be the lesser of $33,500 or the actual damage, allegedly $31,492.65.

Spanish Line contends that the freight for the shipment was calculated under two different customary freight units, as allegedly provided for in the Tariff: 1 lump sum customary freight unit for the first 2400 cubic feet and 17 additional customary freight units, each representing 40 cubic feet, for the remainder of the shipment, producing a total of 18 customary freight units for the entire shipment. Of these units, the tractor represented 9: the 1 lump sum unit and 7.05 additional units—8 when rounded off to the next unit—of 40 cubic feet. Therefore, Spanish Line concludes, its liability, if any, for the tractor will be 9 units times $500, equaling $4,500.

In support of its position, Eaton offers the affidavits of, *inter alia,* Thomas J. Patterson, Eaton's Credit Manager, and Donald G. Beaton, President of Forwarding Corp., Eaton's agent. Patterson's allegations are essentially what has been set out above. Patterson Aff. Beaton, whose corporation arranged for the shipment—including processing the various paperwork—alleges that the freight quoted to Forwarding Corp. was based on the total cubic feet of the entire shipment, as required by Spanish Line's Tariff. Affidavit of Donald G. Beaton, sworn to Sept. 27, 1978, ¶¶ 2–3 ("Beaton Aff."). Regarding the actual calculation involved, Beaton alleges that the charge for the first 2400 cubic feet was $2,000, "based on 60 'customary freight units' or $33.33 per 40 cft. and for the next 675 cft. divided by 40 cft., 17 'customary freight units' times $30.00 for $510.00, making a total freight charge of $2,510.00." *Id.* ¶ 4. He alleges that 40 cubic feet is "known to all in the ocean transportation trade" as the customary freight unit when measurement, rather than weight, is used to determine the freight. He also relies on Spanish Line's Tariff for the applicability of this figure. These allegations, and his others, are made primarily in reliance on the Bill of Lading and the Tariff.

Spanish Line offers affidavits of William F. Burns, at the time in question Traffic Manager of Smith & Johnson, the defendant's shipping agent, and Peter E. W. Southwell, a Line Manager with Peralta Shipping Corporation and presumably an expert in the field, as well as an affidavit of Spanish Line's attorney. Burns supervised the preparation of the freight rate calculation for the shipment at issue here. He describes the calculation as follows. The Bill of Lading showed that the shipment was to be calculated on the number of freight units. Dock Receipt No. 092 indicated the cubic feet of the tractor, the tractor bucket, and the spare parts. To determine the proper freight, he referred to the applicable Tariff, "which called for a Lump Sum Charge for an industrial tractor of $2,000 for the first 2400 cubic feet (a customary freight unit)" of the shipment. He then added $30 for each 40 cubic feet in the remaining 674 cubic feet of the shipment. Affidavit of William F. ·Burns, sworn to Dec. 5, 1978, at 2 ("Burns Aff."). He added the sum from the latter calculation to the $2,000 and derived a total freight of $2,510. *Id.* at 3.

Southwell, who reviewed the documents for Spanish Line, concludes that the Tariff provides for two forms of customary freight units: a lump sum unit and a 40 cubic foot unit. He alleges that both

freight units are customary in the trade to and from Spain and Portugal. He further concludes that the total shipment consisted of 18 customary freight units. Affidavit of Peter E. W. Southwell, sworn to Dec. 6, 1978, at 2. He also describes the arithmetic functions, including rounding of numbers, necessary to determine the freight as Spanish Line calculated it. *Id.* at 2–3.

Eaton replies that there can be no separate lump sum customary freight unit: under the Tariff the total shipment had to be measured, and the Tariff gives no rate for a portion—2400 cubic feet—of just the tractor. Spanish Line, replying in turn, contends that a customary freight unit is a unit on which the charge is based, and here a lump sum of $2,000 was charged for the first 2400 cubic feet. It further reasons that if the total measurement had been 2400 cubic feet or just less, then unquestionably only 1 customary freight unit would have been used—a lump sum unit.

### Discussion

■ The Bill of Lading for the shipment incorporated COGSA. Exh. 1, ¶ 37, to Eaton's Notice of Motion. COGSA § 4(5) provides:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been de-clared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, That such maximum shall not be less than the figure above named. · In no event shall the carrier be liable for more than the amount of damage actually sustained.

(Original emphasis). Under the Bill of Lading, ¶ 30, the $500 limitation remains applicable, no higher valuation having been declared.[2] Because the parties agree that the tractor was not shipped as a package, the limitation must be based on the number of customary freight units in the tractor. The parties further agree that the freight was based on the measurement of the shipment and not its weight. Accordingly, the question is whether the freight charged was based solely on a customary freight unit of 40 cubic feet, as Eaton contends, or on 2 different customary freight units—1 lump sum unit for the first 2400 cubic feet of the shipment and the remaining units for customary freight units of 40 cubic feet—as Spanish Line contends. Because the parties also agree throughout their papers that the customary freight unit for that part of the shipment over 2400 cubic feet is 40 cubic feet, the question is reduced further to whether the lump sum charge for the first 2400 cubic feet may be considered a customary freight unit within the meaning of COGSA § 4(5).

2. The Bill of Lading ¶ 30 provides:

30. In consideration of a choice of freight rates having been offered to the shopper by the Carrier, it is agreed that in case of loss of, or damage to or in connection with, goods of an actual value exceeding $500 lawful money of the United States per package or, in case of goods not shipped in packages, per customary freight unit, the value of such goods shall be deemed to be $500 per package or per said unit and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per said unit or pro rata in case of partial loss or damage, unless the nature of such goods and a value higher than $500 per package or per said unit shall have been declared in writing by the shipper upon delivery to the Carrier and noted on the face hereof and unless payment of the extra freight charge incident thereto shall have been made or promised, as the Carrier may require, in which case such declared value, or the actual value if less, shall be the basis for computing damages and any partial loss or damage shall be adjusted pro rata. In case freight on such goods is paid on ad valorem basis, in whole or in part, then the value thereof stated on the face hereof for such purpose shall constitute such declared value.

The barriers to a resolution are considerable: on the meaning of "customary freight unit," COGSA is a sphinx; the reported decisions are inconsistent and cannot be satisfactorily rationalized, cf. *Aluminios Pozuelo Ltd. v. S. S. Navigator*, 407 F.2d 152, 154–55 (2d Cir. 1968) (confusion under same section regarding the meaning of "packages"); and the parties' moving papers do not dispose of these barriers. The early leading case, *Brazil Oiticica v. The Bill*, 55 F.Supp. 780, 783 (D.C.Md.), aff'd per curiam sub nom. *Lorentzen v. Brazil Oiticica, Inc.*, 145 F.2d 470 (4th Cir. 1944), interpreted "customary freight unit" to refer to "the unit of quantity, weight or measurement of the cargo customarily used as the basis for the calculation of the freight rate to be charged." Cases since then, however, have read the phrase more narrowly; "customary" or "customarily" has essentially been deleted. The phrase "customary freight unit" has been read by most courts to mean the freight unit by which the freight was calculated in that particular case. In so reading the phrase, they have relied on the bills of lading and tariffs. *See, e. g., General Motors Corp. v. Moore-McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.), aff'g per curiam 327 F.Supp. 666 (S.D.N.Y.1971); *Petition of Isbrandtsen Co.*, 201 F.2d 281 (2d Cir. 1953); *Waterman S. S. Corp. v. United States Smelting, Refining & Mining Co.*, 155 F.2d 687 (5th Cir.), cert. denied, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946); *Caterpillar Americas Co. v. S. S. SEA ROADS*, 231 F.Supp. 647 (S.D.Fla.1964), aff'd, 364 F.2d 829 (5th Cir. 1966); *Freedman & Slater, Inc. v. M. V. TOFEVO*, 222 F.Supp. 964 (S.D.N.Y.1963); *Middle East Agency v. JOHN B. WATERMAN*, 86 F.Supp. 487 (S.D.N.Y.1949).

The documents in this case indicate the following. The Dock Receipt, copies of which are attached as Exh. Bs to Spanish Line's Notice of Motion, lists the total measurement of the shipment as 3074 cubic feet—it should be 3075—of which the tractor contributed 2682.2 cubic feet, the bucket 379.6 cubic feet, and the box of parts 13.2 cubic feet. These figures are the same ones quoted to Forwarding Corp., Eaton's agent. Exh. 2 to Eaton's Notice of Motion. The Bill of Lading supplied by Eaton, id. Exh. 1, has neither those measurements nor the charges. Spanish Line's copies of the Bill of Lading, Exh. As to Notice of Motion, have not only the measurements of the pieces of the shipment and the total cubic feet but also a statement of charges, listed as "1 Tractor lump sum . . . 2000.00" and "680.0 Cubic Feet [at] 30.00 per 40 C. Ft. . . . 510.00" for a total freight of $2,510.00.[3] To determine how Spanish Line, by its agent, determined these charges, the Court must examine the Tariff.

The Tariff provides in part:

Except as otherwise provided herein rates apply per Ton of 2,240 Lbs. or 40 Cubic Feet, whichever produces the greatest revenue.

| COMMODITY DESCRIPTION AND PACKAGING | RATE BASIS | RATE |
|---|---|---|

Tractors, Industrial (NOT Agricultural or Warehouse which see)
    Applicable freighting for each <u>complete</u> unit, ie. incl. attachments, to be determined optionally, weight or measurement, within indicated scale of limits, and choice yielding greater revenue will govern. Trac-

**3.** Eaton contends that because Spanish Line's copies of the Bill of Lading do not conform with the one given it, Spanish Line's versions must be disregarded. Spanish Line counters by stating that bills of lading are used for many purposes and that differences among copies of the same original bill of lading are to be expected. The Court need not disregard Spanish Line's copies, however, because they do not alter the result here and because, in any event, Spanish Line agrees that the Tariff is controlling. Affidavit of Harold V. Higham, sworn to Dec. 7, 1978, at 3.

| COMMODITY DESCRIPTION AND PACKAGING | RATE BASIS | RATE |
|---|---|---|
| Tractors, Industrial (NOT Agricultural or Warehouse which see) | | |
| tor Parts shipped separately will be assessed tariff rate. | | |
| Up to 14,000 lbs. and up to 400 cft. | Lump Sum | 325.00 |
| From 14,001 lbs. to 28,000 lbs. or 401 cft. to 799 cft. | " " | 525.00 |
| " 28,001 lbs. to 36,000 lbs. or 800 cft. to 1099 cft. | " " | 765.00 |
| " 36,001 lbs. to 42,000 lbs. or 1100 cft. to 1499 cft. | " " | 910.00 |
| " 42,001 lbs. to 60,000 lbs. or 1500 cft. to 1799 cft. | " " | 1065.00 |
| " 60,001 lbs. to 80,000 lbs. or 1800 cft. to 2099 cft. | " " | 1565.00 |
| Over 80,001 lbs. or from 2100 cft. to 2400 cft. | " " | 2000.00 |
| Over 2400 cft. $2000.00 plus $30.00 per 40 cft. or fraction thereof. | | |

Exh. 3 to Eaton's Notice of Motion; Exh. Cs to Spanish Line's Notice of Motion (original emphasis).

After reviewing the Tariff and Bill of Lading in this case, the Court concludes that the lump sum rate of $2,000 for 2400 cubic feet is not a customary freight unit within the meaning of COGSA § 4(5). Rather, the lump sum figure in this case appears to represent one level on a shorthand sliding scale by which Spanish Line calculates the freight for industrial tractors. Although the lump sum was used, at least in this shorthand, arithmetic sense, to calculate the freight for the shipment, *see* Burns Aff. at 2–3—and would therefore appear to be the basis for determining the number of customary freight units, the reasons for deciding otherwise are more persuasive.

First, a calculation of Spanish Line's limit of liability based on the lump sum of $2,000 for the first 2400 cubic feet does not yield one certain result. The question is what cubic feet come first—those of the tractor or those of the bucket and spare parts. If the entire lump sum is first applied to the tractor, then a relatively small number of cubic feet will remain for a calculation of liability at the rate of 40 cubic feet. If the lump sum is instead first applied to the bucket and spare parts, then fewer cubic feet of the lump sum will remain to be subtracted from the tractor, and, consequently, more cubic feet of the tractor will remain for a calculation of liability at the higher-liability-producing rate of 40 cubic feet. These alternative methods of determining Spanish Line's liability are as follows. Spanish Line calculates its liability by subtracting the alleged customary freight unit of 2400 cubic feet from the 2682.2 cubic feet of the tractor and dividing the remaining 282.2 cubic feet by the 40 cubic feet customary freight unit. This calculation yields 1 lump sum unit and 7.05 units of 40 cubic feet. When the latter is rounded off to 8 units, the two different customary freight units produce a total of 9 units and a resulting liability of $4500 (9 × $500 per customary freight unit).

Spanish Line's liability could just as readily be calculated by subtracting the cubic feet of the bucket (379.6) and spare parts (13.2) from the lump sum of 2400 cubic feet, leaving 2007.2 cubic feet. That remaining portion of the lump sum (1 customary freight unit, when rounded off) would then be subtracted from the 2682.2 cubic feet of the tractor, leaving 675 cubic feet (instead of the 282.2 cubic feet under Spanish Line's calculation). The 675 cubic feet would then be divided by the 40 cubic feet customary freight unit, resulting, when rounded off, in 17 customary freight units, for a total of 18 customary freight units when added with the 1 lump sum unit. Under this method of calculation, Spanish Line's potential liability would be $9,000 (18 × $500 per customary freight unit), instead of $4,500 as under Spanish Line's calculation. The Tariff sug-

gests no preference for one method over another. The freight calculation is not based on what level on the sliding scale the tractor weight alone rests, or the bucket or spare parts, but rather on the total weight "for each *complete* unit." (*See* quoted portion of Tariff *supra*; original emphasis). In choosing between alternative methods of calculating Spanish Line's liability, it would seem reasonable to construe the ambiguity against the drafter, Spanish Line. Such a construction appears particularly fair where Spanish Line receives the benefit of the freight calculations: the Tariff, as quoted *supra*, provides that "[e]xcept as otherwise provided herein rates apply per Ton of 2,240 Lbs. or 40 Cubic Feet, whichever produces the greatest revenue" and that "choice yielding greater revenue will govern." By choosing the method of calculation that yielded it the greater revenue, Spanish Line created the ambiguity inherent in any determination of liability based on the lump sum rate. The ambiguity, for all of the reasons given here and below, can best be avoided by finding, as the Court did above, that 40 cubic feet is the only customary freight unit for the shipment in question. The 40 cubic feet figure yields only one result: a potential liability of $33,500 (2682.2 cubic feet divided by 40 cubic feet equals 67 customary freight units; 67 × $500).[4]

A second reason for concluding that the rate of $2,000 for 2400 cubic feet is merely one level on a shorthand method for calculating freight and not a customary freight unit within the meaning of COGSA may be found in the illogic of a contrary result. For example, the limit of liability, under Spanish Line's reasoning, would be twice as great for a 2440 cubic feet tractor as it would for a 2400 cubic feet tractor: the additional 40 cubic feet would add 1 customary freight unit to the 1 unit of 2400 cubic feet, and the liability for customary freight units is the same regardless of the

size or value of the goods they represent. In this case, under Spanish Line's reasoning, the liability for the first 2400 cubic feet would be $500 while the liability for the remaining 282.2 cubic feet would be $3,500. Although such illogic may be necessary in cases where the evidence does not provide a more reasonable method of calculating the carriers' liability, *see, e. g., Petition of Isbrandtsen Co., supra,* 201 F.2d at 286; *Caterpillar Americas Co., supra,* 231 F.Supp. at 650 (both discussed *infra*), the Court need not strain to reach such a result because the Tariff in the instant case provides a reasonable and unambiguous method of calculation.

Third, finding that 40 cubic feet is the only customary freight unit in this case better fulfills the purpose of COGSA § 4(5), which is to " 'set a reasonable figure below which the carrier should not be permitted to limit his liability' ", *Shinko Boeki Co. v. S. S. PIONEER MOON,* 507 F.2d 342, 344–45 (2d Cir. 1974), *quoting Leather's Best, Inc. v. S. S. MORMACLYNX,* 451 F.2d 800, 815 (2d Cir. 1971); *see Gulf Italia Co. v. THE EXIRIA,* 160 F.Supp. 956, 959 (S.D.N.Y.), *aff'd,* 263 F.2d 135 (2d Cir. 1959); *Jones v. THE FLYING CLIPPER,* 116 F.Supp. 386, 388–89 & n. 11 (S.D.N.Y.1953), and not permit the carrier to escape liability for just claims. *Hartford Fire Ins. Co. v. Pacific Far East Line, Inc.,* 491 F.2d 960, 962 (9th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *Stirnimann v. THE SAN DIEGO,* 148 F.2d 141, 143 (2d Cir. 1945); *see* G. Gilmore & C. L. Black, Jr., *The Law of Admiralty* § 3–46 (2d ed. 1975). *But see, e. g., Petition of Isbrandtsen, supra,* 201 F.2d at 285; *Caterpillar Americas Co., supra,* 231 F.Supp. at 650. Limiting Eaton's possible recovery for 2400 cubic feet of a tractor to $500 and for the entire tractor to $4,000 for Spanish Line's alleged negligence does not strike the Court as achieving "reasonable figures." Spanish Line's suggestion that Eaton could have

---

4. Were a lump sum customary freight unit otherwise reasonable on the facts of this case, the Court might not allow the problem of an uncertain result to deter it from using the lump sum figure. The Court might then conclude that the

shipment contained a total of 18 customary freight units and find a compromise method of calculation. But finding a lump sum customary freight unit of 2400 cubic feet in this case is not otherwise reasonable.

increased the limitation under the Bill of Lading and COGSA by declaring a higher value for the goods is true, but unavailing. The question remains: Given the $500 limit per customary freight unit, how many customary freight units were in the shipment.

A fourth reason for finding only one customary freight unit in this case is that courts should look with skepticism at attempts of carriers to limit their liability beyond that allowed by COGSA § 4(5). *See Pan-Am Trade & Credit Corp. v. THE CAMPFIRE*, 156 F.2d 603 (2d Cir.), *cert. denied*, 329 U.S. 774, 67 S.Ct. 194, 91 L.Ed. 666 (1946). A carrier might attempt to limit its liability not only by the obvious, and therefore unlikely, reduction in liability below the § 4(5) $500 minimum figure. A carrier might attempt to achieve the same result more easily—given the uncertainty in the law—by creating larger, and therefore fewer, customary freight units. Under Spanish Line's reasoning, a carrier could calculate freight rates by creating lump sum levels high enough to reduce any size shipment to a single customary freight unit and thereby limit its maximum exposure to $500. While the Court is not called on to address the possible cases, it does decide that, on the Tariff and Bill of Lading here and all the circumstances of this case, limiting the potential liability for a 2400 cubic foot portion of the tractor to $500 is unreasonable.

In support of its position that the 2400 cubic feet lump sum is a customary freight unit, Spanish Line relies partly on *General Motors Corp., supra* ; *Petition of Isbrandtsen Co., supra* ; *Freedman & Slater, Inc., supra* ; and *Caterpillar Americas Co., supra.* In these cases, the courts found that entire shipping units constituted the customary freight units. They reached their conclusions despite the general principle that customary freight units do not refer to the shipping units, *General Motors Corp., supra*, 451 F.2d at 25; *Petition of Isbrandtsen Co., supra*, 201 F.2d at 286, because, in these cases, the shipping units were the bases on which the freights were calculated.

In *General Motors Corp.*, the plaintiff sought to recover damages for its generator when it was dumped into the sea during discharge in Brazil. It argued to the district court that the freight charge was based on a measurement to (40 cubic feet). The defendant argued that the charge was based on a flat rate for each power plant shipped, of one of which the damaged generator was a part. Noting the absence of the original bill of lading to resolve the dispute, the court found for the defendant; it reasoned that under the applicable tariff the freight was determined on the basis of the entire power plant and that the measurement cited by the plaintiff was not mentioned. 327 F.Supp. at 669–70. Accordingly, the plaintiff was limited to a recovery of $500 for the loss of the generator. In affirming the decision, the court of appeals addressed General Motors' contention that a measurement ton is a more customary freight unit and that it was used in computing surcharges on the shipment. The court of appeals rejected that contention, concluding that the surcharge, levied on all those using Brazilian ports, was only incidental to the much large principal charge, which was determined on a flat rate. 451 F.2d at 26.

In *Petition of Isbrandtsen*, the United States sought to recover for the destruction of ten locomotives and their tenders while in transit to Korea. The Government successfully established that the fire was due to the negligence of the defendant, but it was limited to a recovery of $500 for each set of locomotive and tender even though the freight alone for each set was $10,000. 201 F.2d at 284–86. The court reasoned that the evidence clearly showed that the freight rate was calculated on the basis of each set of locomotive and tender. *Id.* at 286. The court then pointed out that its interpretation of "customary freight unit" may lead to strange results because smaller locomotives would impose greater liability on the carriers than large locomotives because freight for the smaller ones would be calculated per ton rather than per set of locomotive and tender. *Id.*

In *Freedman & Slater, Inc.*, the court reached a similar result. In determining the limitation of liability for a shipment of automobiles damaged en route from Germany to the United States, the court found that both the tariff and the bill of lading indicated that the freight was calculated per vehicle and not per cubic meter as the shopper had argued. 222 F.Supp. at 973. Policy considerations and principles of fairness, the court added, supported its conclusion; if the tariff and the bill of lading were not relied on, shippers would be unfairly bound by the internal calculations of carriers and their associations. *Id.*

In a variation on the same theme, the court in *Caterpillar Americas Co.* limited recovery to $500 for a tractor that had been dropped overboard during discharge. In the absence of convincing evidence otherwise, the court found that the customary freight unit was a lump sum freight for the entire shipment of tractor and its parts— "regardless of the harshness or seeming illogic of such a result." 231 F.Supp. at 650, *citing Petition of Isbrandtsen.*

These cases support the proposition that a lump sum can be a customary freight unit where a flat rate was charged per shipping unit or per complete shipment. In the instant case, the freight was not calculated either on a flat rate for the tractor or on a flat rate for the entire shipment. The freight listing ("1 Tractor lump sum . . 2000.00") on the copies of the Bill of Lading provided by Spanish Line does not establish the tractor—as a separate item—as a customary freight unit. As provided by the Tariff, the entire unit—tractor, attachments, and parts when included in the shipment—is to be measured and charged; it does not provide a separate charge for the tractor. Accordingly, to the extent that it suggests a set charge for the tractor alone, the Bill of Lading's freight designation is incorrect.

In these cases relied on by Spanish Line, the courts appeared constrained to reach harsh results because the bills of lading and tariffs did not establish more reasonable customary freight units. Here, the 40 cubic feet customary freight unit found by the Court is established by the Tariff; accordingly, it was unnecessary to rely on the scale of lump sum charges. The scale may well be useful for the internal calculations of the carrier, but—for the reasons given above—it does not provide a reasonable basis for finding customary freight units at each of its ascending levels.

The Court would be remiss, however, to suggest that all of the cases interpreting COGSA § 4(5) can be harmonized. They cannot be. In the absence of any truly customary freight units, a court must attempt to ascertain—in light of the purpose behind COGSA § 4(5)—a reasonable understanding of the basis for a freight charge in a particular case. After attempting to do so in this case, the Court concludes that the lump sum charge is not a customary freight unit within the meaning of section 4(5).

*Conclusion*

The confusion in the law regarding the term "customary freight unit" has made a determination of the potential liability in this case a difficult one, but the question will not become easier after a trial. The question requires interpreting the documents already before the Court in light of the relevant authorities. In doing so, the Court has found that only one customary freight unit within the meaning of COGSA § 4(5) was used in calculating the freight for the tractor, bucket, and spare parts—a customary freight unit of 40 cubic feet.

Accordingly, in granting and denying each motion in part, the Court finds that Spanish Line's liability, if established, will be limited to the lesser of $33,500 (67 customary freight units × $500) or the actual damages to the tractor. Implicit in this determination is the Court's finding that Spanish Line is entitled to rely on its affirmative defense based on COGSA § 4(5).

So ordered.