**ULRICH AMMANN BUILDING EQUIPMENT LTD., and Gothaer Versicherungs Bank A.G. for and on Behalf of itself and all other concerned underwriters, Plaintiffs,**

**v.**

**M/V MONSUN, her engines, boilers, etc. in rem, K.G. Zyklon Schiffahrtsges mbh & Co., Hugo Stinnes Zweigniederlassung, Saudi National Lines, Costa Armatori S.P.A. and Caterpillar Tractor Company, Defendants.**

**No. 83 Civ. 2752 (RWS).**

United States District Court, S.D. New York.

March 21, 1985.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for plaintiffs.

Haight, Gardner, Poor & Havens, New York City, for defendants M/V MONSUN, K.G. Zyklon Schiffahrtsges mbh & Co. and Hugh Stinnes Zweigniederlassung.

DeOrchis & Partners, New York City, for defendants Saudi National Lines and Costa Armatori, S.p.A.

## OPINION

SWEET, District Judge.

Plaintiffs Ulrich Ammann Building Equipment Ltd. and Gothaer Versicherungs Bank A.G. (collectively "Ammann") brought this action to recover for damage to and loss of Caterpillar tractors shipped from Wilmington, Delaware to the Port of Aqaba, Jordan on the M/V MONSUN. Defendant *in rem* M/V MONSUN and defendants K.G. Zyklon Schiffahrtsges mbH & Co., Hugo Stinnes Zweigniederlassung, Saudi National Lines and Costa Armatori S.p.A. (collectively "the Ship Defendants") have now moved for partial summary judgment pursuant to Fed.R.Civ.P. 56 limiting Ammann's damages to the $500 limitation contained in the United States Carriage of Goods by Sea Act ("COGSA"). The parties agree that all evidence as to this matter was before the court. Ammann opposes the motion for partial summary judgment and has moved to strike the Ship Defendants' assertion of this limitation of liability as an affirmative defense. For the reasons stated below, the Ship Defendants' motion for partial summary judgment is granted and Ammann's motion is denied.

**Facts**

The cargo which is the subject of the present action was carried from Wilmington, Delaware to the Port of Aqaba, Jordan on the M/V MONSUN pursuant to the terms of an ocean bill of lading. The M/V MONSUN is owned by K.G. Zyklon Schiffahrtsges mbH & Co. ("Schiffahrtsges"), the managing agent was Hugo Stinnes Zweigniederlassung ("Zweigniederlassung"), the time charterer of the vessel was Saudi National Lines ("Saudi National"), and the general agent for Saudi National was Costa. The shipping agent of Kuehne and Nagel ("Kuehne") acted as shipping and forwarding agent for Ammann.

In March of 1981, on Ammann's behalf, Kuehne booked thirty Caterpillar tractors, known as scrapers, for ocean carriage with Saudi National through its agent Costa, in Genoa, Italy. In accordance with 46 U.S.C. § 817(b)(1), Saudi National had a tariff on file with the Federal Maritime Commission and maintained rates for the transportation of commodities pursuant to such tariff. Instead of applying a rate from Saudi National's tariff, which would have provided for freight on a weight or measurement basis, a lump sum rate was negotiated covering the entire shipment. On March 13, 1981, a tariff amendment setting forth this lump sum rate was filed. The tariff shows the following reference to the scrapers:

Scrapers—30 units to move on 1 or 2 vessels Aprox. 866 LT/156,690 cu ft. (Wilmington/Aqaba) (& thru 4/12/81) L/S 289,877.00 +

The rate basis in effect for this tariff item was "L/S," which is defined in the tariff as lump sum. The tariff on file listed the normal rate for scrapers at a minimum of $173.00 per measurement ton.

Subsequently, twenty Caterpillar tractors were carried under Saudi National's short form ocean bill of lading. The bill of lading described the twenty scrapers and listed both the gross weight in kilograms and the measurement in centimeters. The bill of lading also stated "Freight Prepaid" and, under the area for computation of freight charges, "Freight as Agreed." During the course of the shipment, several of the tractors were allegedly damaged or lost.

**Discussion**

Because the shipment was carried under an ocean bill of lading, it was subject to the provisions of the Carriage of Goods by Sea Act. 46 U.S.C. § 1304 states:

§ 1304. RIGHTS AND IMMUNITIES OF CARRIER AND SHIP

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading.

The "guiding policy" of COGSA is "to limit liability of common carriers for damaged cargo where the value of the cargo is not known to the carrier." *THE MORMACOAK,* 451 F.2d 24, 26 (2d Cir.1971). The statute was designed "to protect the shipping industry and to throw the burden to the shipper to declare the value of the goods and pay a higher tariff if he wished to have higher liability on the part of the carrier." *Caterpillar Americas Company v. Steamship Sea Roads,* 231 F.Supp. 647, 650 (S.D.Fla.1964), *aff'd,* 364 F.2d 829 (5th Cir.1966).

The words "customary freight unit", which describe the unit as to which the shipper's liability is limited to $500, refer not to the physical shipping unit but to the unit of cargo "customarily used as the basis for the calculation of the freight rate to be charged." *The MORMACOAK, supra,* 451 F.2d at 25; *The Edmund Fanning,* 201 F.2d 281, 286 (2d Cir.1953). Thus, where a freight charge is computed on a lump sum basis for each of several pieces of equipment, the relevant custom-

ary freight unit is each piece of equipment. *Caterpillar Americas Co., supra,* 231 F.Supp. at 650. If a freight charge is computed on a lump sum basis for an entire shipment, the relevant customary freight unit is the entire shipment.

In the case at hand, the parties agree that the tractors were shipped in an unpackaged form and are in a disagreement only as to the relevant customary freight unit. If the customary freight unit is held to be the entire shipment of thirty tractors, Ammann's recovery is limited to $500 under both COGSA and the terms of the bill of lading. Similarly, if the customary freight unit is held to be each piece of equipment shipped, Ammann's recovery is limited to $500 for each tractor. If, however, the customary freight unit is per measurement ton, as it would be if the ordinary tariff rates rather than the amended rates were held to control, Ammann would be entitled to recover $500 for each measurement ton shipped or approximately $65,000 per tractor.

■ The Ship Defendants assert that the parties agreed to a lump sum rate for the entire shipment of thirty scrapers on one or more vessels. They contend that there was no weight or measurement basis for the freight charge and that the customary freight unit agreed upon by the parties was instead the entire shipment. They point to both the filed amended tariff and the freight list, which states that the twenty tractors were shipped under a lump sum rate, as evidence of this agreement. They argue that Ammann took a calculated risk in agreeing to the lump sum freight basis because while it reduced the amount of COGSA coverage to which Ammann would be entitled, it also gave them a considerable savings on freight cost.[1]

In response, Ammann asserts that the Ship Defendants have failed to prove that the customary freight unit to be applied was the special amended rate rather than the regular weight/measurement tariff. It claims that there is no evidence as to what the phrase "Freight as Agreed" was intended to mean. The thrust of Ammann's argument is that because the shipment in question was for twenty rather than thirty tractors, this court cannot assume that the shipment was covered by the rates listed in the amended tariff. It argues that while the lump sum rate was for thirty units, the bill of lading covers a shipment of only twenty units and that there is no actual evidence of the freight actually charged for the shipment. It also points to the fact that like the regular tariff, the bill of lading used kilograms and centimeters to describe the shipment, whereas the filed amended tariff used tons and feet.

Despite Ammann's contentions, the Ship Defendants have successfully met their burden of establishing that the shipment of twenty tractors was made on a lump sum basis. The amended tariff expressly lists the tractors as being on a lump sum rather than weight/measurement rate basis. *See The MORMACOAK,* 327 F.Supp. at 669 (flat rate in filed amended tariff applied despite plaintiff's claim that missing bill of lading computed freight on weight basis). Ammann claims that because of the discrepancies in numbers the amended tariff pertaining to thirty tractors should not be applicable to a shipment of only twenty tractors. However, there is an express statement in the tariff that the tractors were to be shipped on one or two vessels. Furthermore, there is nothing on either the bill of lading or the freight list or in this record to suggest that the parties intended the shipment to be dealt with on a different basis than that listed in the amended tariff. The listing of weight and measurement and a measurement different

---

1. According to the Ship Defendants' calculations, Ammann would have paid $677,684.25 in freight charges and received $1,958,625 worth of "COGSA" cover if the ordinary tariff rate had been applied. In order to get full coverage of the $6,750,000 cargo value alleged in the complaint, by declaring ad valorem, Ammann would have had to pay an additional $359,-353.13 in freight for a total freight charge of $1,037,037.38. The lump sum actually paid by Ammann was $289,877.00, a savings of $747,-160.38 over the freight inclusive of ad valorem and a savings of $387,807.25 over the freight per tariff.

from that on the tariff, does not obviate the implications of a lump sum payment. *See Freedman & Slater, Inc. v. M.V. TOFEVO,* 222 F.Supp. 964, 973 (S.D.N.Y. 1963). Courts have held that even where a lump sum rate is arrived at by using weight and measurement, the weight/measurement does not become the freight unit for the transaction. *See General Motors Corp. v. Moore-McCormack Lines, Inc.,* 451 F.2d 24, 25–26 (2d Cir.1971); *Barth v. Atlantic Container Line,* 597 F.Supp. 1254 (D.Md.1984). In addition, there is no validity to Ammann's claim that a temporary rate cannot be a "customary" rate. A customary freight unit is one that is "known to the immediate parties." *Freedman & Slater, Inc. v. M/V TOFEVO,* 222 F.Supp. 964 (S.D.N.Y.1963).

A tariff validly filed "is not a mere contract but is the law ..." *The Peisander,* 648 F.2d 415, 421 (5th Cir.1981). Thus the rate basis listed in the amended tariff, which was in effect at the time of the shipment, must be applied. Because the freight charged for the shipment of twenty tractors was computed on a lump sum for the entire shipment rather than for each piece of equipment or on a weight/measurement basis, the relevant customary freight unit is the entire shipment. Ammann is therefore limited under both COGSA and the bill of lading to a recovery of $500. While this result seems harsh given the actual value of the cargo, it is consistent with the intent of the statute. Ammann could have paid a higher tariff if it wished to impose a higher liability on the carrier. *See Caterpillar Americas Co. v. Steamship Sea Roads, supra,* 231 F.Supp. at 650; *Petition of Isbrandtsen,* 201 F.2d 281 (2d Cir.1953). Because the bill of lading contained language providing for limitation of liability and also incorporated COGSA, the burden is on Ammann to prove that an opportunity to declare a higher value did not exist. *Barth v. Atlantic Container Line, supra,* at 1257. Ammann has not met this burden.

For the reasons discussed above, the Ship Defendants' motion for partial summary judgment is granted and Ammann's motion to strike the Ship Defendants' affirmative defense is denied.

IT IS SO ORDERED.