**Ali A. TAMINI, Plaintiff,**

v.

**M/V JEWON, et al., Defendants.**

**Civ. A. No. H–87–1053.**

United States District Court,
S.D. Texas,
Houston Division.

April 22, 1988.

Halley & Chalos, New York City, for Ali A. Tamini.

Christopher P. Keane, New York City, for Salen Dry Cargo AB, and San Project/Line Services, Inc.

Keith W. Heard, Kirlin, Campbell & Keating, New York City, Gus Schill Jr., Royston, Rayzor, Vickery & William, Houston, Tex., for Ahjin Shipping Co., Ltd.

G. Byron Sims, Houston, Tex., for Empire United Stevedoring Corp.

MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

Pending before the Court are Plaintiff's and Defendant Ahjin Shipping Co., Ltd.'s

("Ahjin") cross motions for summary judgment. Also pending is Ahjin's motion for summary judgment against Empire United Stevedoring Corp. For the reasons stated below, it is the opinion of the Court that Plaintiff's motion for summary judgment should be granted on both the liability and limitation of damages issues. Ahjin's motion for summary judgment against Empire should be denied.

### Facts

This is an action within the admiralty and maritime jurisdiction of the Court to recover for damages to the Plaintiff Tamini's rotary drill rig that was to be shipped from Houston, Texas to Dammam, Saudi Arabia. After the drill rig was loaded aboard the M/V JEWON, the stevedore, third-party defendant Empire United Stevedoring Corp. ("Empire"), allegedly dropped a heavy piece of metering equipment onto the drill rig. As a result of the damage to the drill rig, it was discharged from the JEWON before the vessel sailed. Eleven boxes of accessories to the drill rig were left aboard the JEWON for shipment to Dammam.

Tamini first commenced this action in the Southern District of New York against the JEWON *in rem*, Ahjin *in personam* and the subcharterer, Salen. Before Ahjin or the vessel were served with process, Tamini pursued arbitration against Salen. After Salen declared bankruptcy in Sweden, Tamini threatened to arrest the JEWON in South Africa. In lieu of the arrest, the vessel's owner, Ahjin, filed a Claim of Owner, issued a letter of undertaking to Tamini and agreed to appear and defend the action on behalf of the vessel.

The Southern District of New York dismissed Tamini's *in rem* claim pursuant to Fed.R.Civ.P. 41(b). *Tamini v. M/V JEWON*, 1986 A.M.C. 2184 (S.D.N.Y.1986) [available on WESTLAW, 1986 WL 4067]. On appeal, the Second Circuit vacated the order of dismissal and remanded the case to the district court. *Tamini v. M/V JEWON*, 808 F.2d 978 (2nd Cir.1987). Ahjin and Tamini agreed to transfer the case to this Court to allow Ahjin to implead Empire, the stevedore.

### Discussion

Summary judgment is authorized if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Tamini argues on motion for summary judgment that that M/V JEWON is liable *in rem* for the damage to the drill rig aboard the vessel and that Tamini is entitled to recover $500 per customary freight unit. Ahjin contends that the vessel and owner are entitled to limit their liability to a total of $500 because the drill rig was a single package under 46 U.S.C.App. § 1304(5).

#### A. Liability *in rem*.

In light of the undisputed facts establishing Tamini's claim for damage to its cargo, the first issue for this Court to consider is whether the defendant vessel, the M/V JEWON, can be held liable *in rem* for the damage to Tamini's cargo.

Tamini's claim is governed by the Carriage of Goods by Sea Act, 46 U.S.C. App. § 1300 *et seq.* or COGSA, which "covers the period from the time when the goods were loaded on to the time they are discharged from the ship." 46 U.S.C.App. § 1301(e). The fact that no bill of lading was issued because the damaged drill rig was discharged from the ship before it sailed does not affect the applicability of COGSA. *Baker Oil Tools, Inc. v. Delta S.S. Lines*, 562 F.2d 938 (5th Cir.1977). The parties have agreed to substitute the Certificate of Origin and the Certificate of Receipt for a bill of lading in this case.

A claimant, in order to establish a *prima facie* case for damage under COGSA, must show delivery of the cargo to the vessel in good condition and discharge in a damaged condition. *Blasser Bros., Inc. v. Northern Pan–American Line, A/S*, 628 F.2d 376 (5th Cir.1980). The undisputed summary judgment evidence shows that Tamini's drill rig was loaded aboard the M/V JEWON, and another heavy piece of equipment was dropped onto the drill rig resulting in damage. Ahjin waived attach-

ment of the vessel by filing a Claim of Owner and issuing a letter of undertaking to Tamini. *See Cactus Pipe & Supply v. M/V MONTMARTRE*, 756 F.2d 1103 (5th Cir.1985). Therefore, the M/V JEWON is liable *in rem* as a result of the damage to Tamini's cargo aboard the vessel.

## B. Limitation of Damages.

■ Under COGSA, the liability of a vessel or a carrier is limited to $500 per package "or in case of goods not shipped in packages, per customary freight unit." 46 U.S.C.App. § 1304(5). Ahjin claims that Tamini's drilling rig is a package, and therefore its liability is limited to $500. Tamini contends that its drill rig is not a package, so its damages should be calculated by customary freight units (161.6 × 500) totaling $80,800.

The undisputed summary judgment evidence show that the freight for Tamini's drill rig was calculated on a weight/measurement basis. The drill rig weighed 62,-745 pounds and had a volume of 6,646 cubic feet. The freight was calculated on the basis of volume (6,464 ft$^3$/1 measurement ton [40 ft$^3$]) resulting in 161.6 customary freight units.

The certificate of origin (stipulated by both parties as the substitute for the bill of lading) reads:

-1- One unit G.D. Model–2000 portable rotary drill, (water well) S/N 20–4285, trailer mounted, complete

-11bx- with standard fittings accessories tools and optional items ...

-12pc- LC no. 10801 ...

This certificate reflects the manner in which a bill of lading would have issued for the cargo had the cargo been shipped to Dammam. The Freight Forwarder's Receipt of Shipment draws the same distinction between the drill rig and the boxes of accessories.

The photographs of the rig show it to be free-standing and mounted on a wheeled-trailer almost completely exposed to view except for two small areas covered by wooden casing. The rig was not attached to a skid and no packaging preparations were attached to facilitate handling or delivery.

The Fifth Circuit in *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277 (5th Cir.1982), addressed the package limitation issue. The court, after reviewing the history of COGSA and decision on the Fifth and other Circuits, cited several cases discussing the various criteria to determine limitation by package or customary freight unit and concluded that the question should be determined on a case by case basis. *Id.* at 1282. The *Croft* court quoted *Waterman S.S. Corp. v. United States S.R. & M. Co.*, 155 F.2d 687 (5th Cir.) *cert. denied*, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946) which held:

The phrase 'per customary freight unit' in this context in light of its legislative history, refers to the *unit of quantity, weight or measurement* of cargo customarily used as the basis for the calculation of the freight rate to be charged. Generally, in marine contracts, the word 'freight' is used to denote remuneration or regard for carriage of goods by ship, rather than the goods themselves....

155 F.2d at 693 (emphasis added).

In *Caterpillar Americans Co. v. S/S SEA ROADS*, 231 F.Supp. 647, *aff'd* 364 F.2d 829 (5th Cir.1966), the Court held that:

With respect to the words 'customary freight unit', the authorities are conclusive that this phrase refers to the unit upon which the charge for freight is computed and not the physical shipping unit.

231 F.Supp. at 649.

The *Caterpillar* court concluded that if customary freight units exist, then this will control the question of limitation of liability. *Id.* at 649–50. In the instant case, the undisputed facts show that Tamini's freight was calculated on a weight/measurement basis, resulting in 161.6 units; therefore, these customary freight units will control liability.

The court in *Croft* also noted that of particular importance in this issue is the parties' intent as expressed in the bill of lading and elsewhere. 664 F.2d at 1282. A review of the relevant shipping documents clearly indicates that none of the parties intended to treat the drill rig as a package. The drill rig was differentiated from the

eleven boxes of additional cargo in all the relevant shipping documents.

Courts in other Circuits have held that various kinds of cargo were packages because they were treated as a package in the shipping documents,[1] almost completely covered by crating,[2] attached to a wooden skid or palette[3] or because wooden appurtenances were attached to facilitate handling.[4] The drill rig in this case was not crated or attached to a skid as in any of these cases. It was free-standing and almost completely exposed to view. The drill rig is not a package, and Ahjin is entitled to limit its liability only to the customary freight units applicable in this case, resulting in a liability of $80,800. It is therefore

ORDERED that Plaintiff's motion against Defendant Ahjin is GRANTED. It is further

ORDERED that Third Party Plaintiff Ahjin's motion for summary judgment against Empire is DENIED because there are genuine issues of material fact that must be resolved.

---

1. *Taiwan Power Co. v. M/V GEORGEWYTHE,* 575 F.Supp. 422 (N.D.Fla.1983).

2. *Solar Turbines, Inc. v. M/V ALVA MAERSK,* 584 F.Supp. 32 (S.D.N.Y.1983).

3. *Marante Forwarding v. C.A. Navierade DE Transporte y Turismo,* 486 F.Supp. 636 (S.D.Fla.1980).

4. *Aluminios Pozuelo Limited v. S/S NAVIGATOR,* 407 F.2d 152 (2nd Cir.1968).