**FMC CORPORATION,**
**Plaintiff–Appellee,**

v.

**S.S. MARJORIE LYKES, her engines, tackles, appurtenances, etc., and Lykes Bros. Steamship Co., Inc., Defendants–Appellants.**

**No. 1198, Docket 88–7201.**

United States Court of Appeals,
Second Circuit.

Argued May 26, 1988.
Decided June 30, 1988.

Christopher H. Mansuy, New York City (Hollis M. Walker, Jr., Constantine W. Papas, Walker & Corsa, New York City, of counsel), for defendants-appellants.

Craig S. English, New York City (Steven Skoufalos, Chalos, English & Brown, P.C., New York City, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, and NEWMAN and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

In October 1982 FMC Corporation ("FMC") shipped 30 small fire engines from Erie, Pennsylvania to Alexandria, Egypt on the S.S. MARJORIE LYKES, under an agreement with the Lykes Brothers Steamship Company ("Lykes"). As the fire engines were being unloaded Lykes dropped one engine onto two others, destroying all three. FMC replaced the three fire engines at a total cost of $165,254.10 and commenced this action seeking damages under the Carriage of Goods by Sea Act ("COGSA"). 46 U.S.C.App. § 1300 *et seq.*

After a bench trial, the district court found Lykes liable for the damage, and on this appeal Lykes does not contest its basic liability; the issue is "how much?". The district court recognized that, in the absence of a declaration of the value of the goods in the bill of lading, COGSA limits the carrier's liability to $500 per package. 46 U.S.C.App. § 1304(5). When goods are not shipped in packages, as in this case, COGSA limits the carrier's liability to $500 per customary freight unit. The basic dispute at trial, and on this appeal, was over how to determine what was the "customary freight unit" for this shipping agreement.

The district court, seeking to determine what unit the parties actually used to compute the freight charged for this shipment, looked first to the bill of lading and the filed tariff, both of which recited a lump sum rate, $4,250, for each of the 30 small fire engines. However, in attempting to discern the intent of the parties, the district court looked beyond these two documents and also considered the parties' negotiations.

Prior to arriving at the agreed lump sum shipping rate, the parties had negotiated for a rate based on a weight/measurement unit of 40 cubic feet. They assumed that a small fire engine measured 1700 cubic feet, although as it turned out later the actual measurement was 1522.5 cubic feet. Lykes initially offered to ship the freight at a rate of $165 for each 40–cubic foot unit, and later reduced its offer to $125 per unit. Before measuring the small fire engines to determine the precise number of cubic feet in each, the parties agreed on a lump sum rate of $4,250 per fire engine. FMC contended that this lump sum figure was arrived at by multiplying a rate of $100 per weight/measurement unit by 42.5, the number of 40–cubic-foot units in a 1700–cubic-foot fire engine. Based on these negotiations, the district court concluded that the customary freight unit for this ship-

ment was 40 cubic feet, that there were 127.5 units in the three damaged fire engines, and thus, at $500 per unit, that Lykes was liable for $63,750.

Because the language of the bill of lading and the tariff is conclusive on the question of the customary freight unit for this shipment, we reverse with a direction to enter judgment for $1,500.00.

## DISCUSSION

The Carriage of Goods by Sea Act, 46 U.S.C.App. § 1304(5), provides that

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in the case of goods not shipped in packages, per customary freight unit * * *.

To eliminate this limitation on liability, the shipper may declare a higher value of the goods in the bill of lading. In this case no value at all was declared in the bill of lading.

Since the fire engines were not shipped in packages, the carrier's liability is limited to $500 per "customary freight unit". The question presented, therefore, is: "What is the 'customary freight unit'?".

■ The cases discussing the meaning of "customary freight unit" are inconsistent. *Eaton Corp. v. S.S. Galeona*, 474 F.Supp. 819, 823 (S.D.N.Y.1979). While some courts have held that the customary freight unit is the measurement "customarily" used to calculate the rate to be charged, *see, e.g., Brazil Oitica, Ltd. v. THE BILL*, 55 F.Supp. 780, 783 (D.Md. 1944), this circuit has taken a different approach. For us, the "customary freight unit" is not the standard unit of measure used in the industry, but the actual freight unit used by the parties to calculate freight for the shipment at issue. *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d 1006, 1016 (2d Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985); *General Motors Corp.*

*v. Moore–McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.1971) (per curiam); *Eaton Corp.*, 474 F.Supp. at 823.

■ To determine the customary freight unit for a particular shipment, the district court should examine the bill of lading, which expresses the "contractual relationship in which the intent of the parties is the overarching standard." *Allied International v. S.S. Yang Ming*, 672 F.2d 1055, 1061 (2d Cir.1982). *See Ulrich Ammann Building Equipment, Ltd. v. M/V Monsun*, 609 F.Supp. 87, 91 (S.D.N.Y.1985). A district court may also consider the tariff required to be filed with the Federal Maritime Commission, which also sets forth the freight rate. *General Motors*, 451 F.2d at 25–26.

■ In this case the district court found that the bill of lading and the tariff "clearly indicate that the fire engines were charged on a lump sum basis." *FMC Corp. v. S.S. Marjorie Lykes*, 83–CV–5231 (Dec. 4, 1987 S.D.N.Y.) [available on WESTLAW, 1987 WL 28797]. This finding is not clearly erroneous. The description of goods recited on the bill of lading was "30 UNBOXED–FIRE ENGINES" and the same bill reflected a "lump sum" charge of "$4,250.00/ea × 30". The tariff also lists the rate basis as "LUMPSUM" and the rate as "4250.00" for each fire truck measuring approximately 1700 cubic feet. Where there is no ambiguity in either the bill of lading or the tariff, there is no need for the district court to consider any of the parties' earlier negotiations, and in doing so here, the district court erred.

In determining the customary freight unit under COGSA, 46 U.S.C.App. § 1304(5), we adopt the principle underlying that rule we have articulated in "package" cases under the same section of COGSA:

when the bill of lading expressly refers to the container as one package, or when the parties fail to specify an alternative measure of the "packages" shipped, the courts have no choice but to respect their

express or implied understanding and to treat the container as a single package. *Allied International v. S.S. Yang Ming,* 672 F.2d at 1061. Thus, the intent of the parties as to the customary freight unit is "the overarching standard", and in determining that intent we look to the bill of lading and the filed tariff. Absent any ambiguity there, the inquiry is ended, and both parties are bound to the freight unit therein adopted. This rule provides certainty and fairness to both sides. The intended freight unit is set forth in the bill of lading, and before shipment either party could require that a different unit be expressed.

■ Even if we were to examine the underlying negotiations, we would not accept FMC's argument that the lump sum rate of $4,250 was actually calculated on the basis of a rate of $100 per weight/measurement unit. None of the correspondence between the parties mentioned a $100 per weight/measurement unit rate; the tariff did not list that rate; and the fire engines actually measured only 1522.5 cubic feet, which would have entitled FMC to an even lower total rate.

While "a court should look with skepticism at attempts of carriers to limit their liability", *Eaton Corp.,* 474 F.Supp. at 826, we are nevertheless, in the absence of a contrary agreement of the parties expressed in the bill of lading, bound by COGSA to enforce the statutory limit of $500 per customary freight unit. FMC could have declared a higher value than $500 for each unit or it could have insisted that the bill of lading calculate the freight rate based on a different unit. Here it did neither.

We are confident that in the long run relying on the express language in the bill of lading as we do here will "foster certainty and security in the shipping business." *Yang Ming,* 672 F.2d at 1057.

## CONCLUSION

The judgment of the district court is reversed, and the district court is directed to enter judgment in favor of FMC Corporation in the amount of $1,500.