D.W.E. CORP. and Overseas International Trading Corporation, Plaintiffs,

v.

T.F.L. "FREEDOM" and the M.V. "NICOLE", their engines, boilers, etc.,

v.

SOCIETE NAVALE CHARGEURS DELMAS–VIELJEUX and Timur Carriers, Defendants.

No. 85 Civ. 8981 (PNL).

United States District Court, S.D. New York.

Jan. 10, 1989.

Bigham Englar Jones & Houston, New York City (William H. Morley, Jr., of counsel), for plaintiffs.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City (Thomas L. Tisdale, Peter J. Zambito, of counsel), for defendant Societe Navale Chargeurs Delmas–Vieljeux.

## OPINION AND ORDER

Findings of Fact and Conclusions of Law

LEVAL, District Judge.

This is a submitted trial on the issue of the limitation of the defendant ocean carrier's liability for loss of the plaintiffs' freight. The facts are not in dispute. Plaintiffs D.W.E. Corp. and Overseas International Trading Corporation are the owners of the cargo. The defendant Societe Navale Chargeurs Delmas–Vielijeux undertook to transport the cargo aboard its vessels.

A shipment said to consist of 1,342 rolls and cartons of various fabrics was loaded by plaintiffs into a 40 foot ocean container. The container was sealed and transported from the stuffing warehouse by plaintiffs. On or about September 15, 1984, the container was delivered by plaintiffs to defendant at a New York ocean terminal. The container was to be transported by defendant from New York to Le Havre aboard the M.V. "TFL FREEDOM," and thereafter carried to Matadi, Zaire, where the container was to be delivered to Zaire Containers of Kinshasa, Zaire.

Defendant was not provided with copies of invoices, packing lists or any other documents reflecting the amount of cargo within the container. Stipulation of Facts ("Stip.") ¶ 4. Plaintiffs did not declare the value of the cargo before shipment or insert the value of the cargo in the bill of lading. Stip. ¶ 11. Nor did plaintiffs pay the *ad valorem* rate which they would have been required to pay if they had declared the value of their cargo. *Id.* Plaintiffs paid an agreed flat freight rate of $4,800 per 40 foot container. Stip. ¶ 13. The container was transported by defendant pursuant to the terms of a bill of lading issued by defendant (the "Bill of Lading"). Stip. ¶ 6. The bill of lading described the cargo provided by plaintiffs as:

| No. of Packages | Description of Package and Goods |
|---|---|
| One (1) | 40′ Container house to house said to contain drygoods, merchandise divers. |

Stip. ¶ 7, Ex. A.

The container was loaded aboard the MV "TFL FREEDOM" in New York and carried to Le Havre where it was discharged and reloaded aboard the M.V. "NICOLE" for carriage to Matadi. Stip. ¶ 9. The container was delivered to the consignees' representative in Matadi on or about November 16, 1984, and thereafter railed to Zaire Container, Kinshasa, Zaire. Stip. ¶ 10. When the containers were opened by consignee on December 22, 1984, plaintiffs discovered that half of the goods was missing. *Id.* The parties agree that the loss was incurred during the maritime portion of the shipment. Stip. ¶ 15.

Plaintiffs are suing for $90,000, the approximate value of the goods lost at sea. Defendant claims that Section 4(5) of the Carriage of Goods by Sea Act, 46 U.S.C. App. § 1304(5) ("COGSA") limits its liability to $500. The parties agreed to conduct trial on a bifurcated basis, first submitting the issue of limitation of liability for judg-

ment prior to trying the other issues. The sole issue before the court is the applicability of the package limitation expressed in Section 4(5).

## Discussion

COGSA applies to the carriage of goods between ports of the United States and foreign ports. By definition, COGSA governs the period from the time the goods are loaded until the time they are discharged from the ship. 46 U.S.C.App. § 1301(e). In cases where COGSA does not apply of its own force and effect, it may be made to apply by its incorporation into the bill of lading. 46 U.S.C.App. § 1307; *see Miller Export Corp. v. Hellenic Lines, Ltd.*, 534 F.Supp. 707 (S.D.N.Y.1982). Plaintiffs' cargo moved from New York to Zaire, via Le Havre and thus was governed automatically by COGSA. Furthermore, the Bill of Lading specifically incorporated COGSA and extended its application to include the periods while the cargo was at a port prior to loading and subsequent to discharge. Thus, COGSA governs plaintiffs' losses.

Section 4(5) of COGSA creates a limitation on the carrier's liability based on the way the goods are packaged for shipment. It provides:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. ·

46 U.S.C.App. § 1304(5). The limitation applies where the shipper is given a fair opportunity to declare a higher value of goods, but nonetheless fails to do so. *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 156 (2d Cir.1968).

Defendant's Bill of Lading specifically incorporates the COGSA limitation of $500 per "package" or "customary freight unit." A blank space on the face of the Bill clearly provides shippers with the opportunity to declare a higher value for their cargo, thus incurring additional carriage charges. In addition, both the reverse side of the Bill and defendant's tariff provide shippers with notice of this opportunity.[1] The Bill of Lading provided plaintiffs with adequate notice of and a fair opportunity to avoid the $500 limitation. *See General Electric Co. v. MV NEDLLOYD*, 817 F.2d 1022, 1029 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 710, 98 L.Ed.2d 661 (1988); *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d 1006, 1017 n. 12 (2d Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985).

Plaintiffs admit that they did not avail themselves of the opportunities to declare the nature and value of the goods shipped, but they nevertheless argue that the limitation is inapplicable. They contend they are entitled to exemption from the limitation by reason of ambiguities in the Bill of Lading that should be construed against defendant and because the optional *ad valorem* rate was so unreasonably high that they had no real option to declare their cargo's value. I find no merit in either of plaintiffs' contentions. *See Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1017 n. 12; *General Electric Co. v. M.V. "NEDLLOYD ROUEN"*, 618 F.Supp. 62, 64 (S.D.N.Y.1985) (citing Diplock, "Conventions and Moral Limitation Clauses in International Maritime Conventions," 1 *Journal of Maritime Law and Commerce*, 529–30 (1970)).

## I.

Plaintiffs contend the *ad valorem* rate they would have been required to pay for carriage of goods valued at $181,242.58

---

**1.** The *ad valorem* clause in the Bill of Lading provides as follows:

> The merchant agrees and acknowledges that the [carrier] has no knowledge of the value of the goods, and that higher compensation than provided above may not be claimed

unless with the consent of the [carrier], the value of the goods declared by the Shipper prior to Commencement of Transport is stated on the [bill of lading] and extra freight duly paid....

was $152,988 or 84% of the value of the cargo. This contention is based on a misreading of the *ad valorem* clause in the tariff.

If plaintiffs had opted to declare the actual value of their cargo on the Bill of Lading, they would have been required to pay a freight charge of $7,229.70 in addition to the straight rate of $4,800.00. *See* Stip. Ex. F.

The clause states: "Where value is declared on any piece or package in excess of the Bill of Lading limit of value, the ad valorem rate, unless specifically provided against the item, shall be four percent (4%) of the value declared in excess of the said Bill of Lading limit of value and is in addition to the base rate. The minimum charge per package shall be $114.00 each." Stip. Ex. F., Rule 12. Thus, if plaintiffs had declared that they were shipping one package of dry goods, merchandise divers with a value of $181,242.58 (the total value of the goods shipped in the container at issue), the *ad valorem* rate would have been calculated as follows: Four percent of $181,-242.58 less the limitation amount ($500), or $7,229.70. When added to the base rate of $4,800, the total *ad valorem* freight rate would have been $12,029.70. This is not an unconscionable charge. *See General Electric Co. v. M.V. "NEDLLOYD ROUEN"*, 618 F.Supp. at 64.

## II.

Plaintiffs contend that each roll and carton of fabric shipped constituted a "package," entitling them to recover as much as $500 per roll or carton. Defendant contends that the container itself was the "package," and that plaintiffs' potential recovery is therefore limited to $500.

The term "package" is defined as "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made, which facilitates handling but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d at 155. Beyond this definition, the question of what constitutes a COGSA package is largely a

matter of contract interpretation. The court must look to the agreement between the parties as set forth in the bill of lading. *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1012; *Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 485 (2d Cir.1985), *cert. denied*, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986); *Allied International American Eagle Trading Corp. v. S.S. "YANG MING"*, 672 F.2d 1055, 1061 (2d Cir.1982). Entries on the bill of lading evidence the intent of the parties, *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1012, and a declaration on the bill may bind a shipper even when the contents of the shipment diverge from the description on the bill. *See Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807, 823 (2d Cir.1981) (Friendly, J.) (The carrier "had no way of knowing that the shipper's representation [as to the container's contents] was false.... [T]his would seem a classic case for the application of estoppel.").

This Circuit has held that a shipping container may not be a COGSA package where the container's "contents and the number of packages or units are disclosed." *Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d at 821; *accord Smythgreyhound v. M/V "EURYGENES"*, 666 F.2d 746, 750–53 (2d Cir.1981). Thus, when the bill of lading discloses not only the number of containers but the number of cartons within each, the cartons, not the containers, will be treated as COGSA packages. *Id.*

Most recently, the Second Circuit held that while it is reluctant to treat a container as a package, *see Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d at 816–17; *Smythgreyhound v. M/V "EURYGENES"*, 666 F.2d at 751, nothing precludes parties from agreeing in the bill of lading that the container shall constitute a COGSA package. *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1013; *see also Allied International American Eagle Trading Corp. v. S.S. "YANG MING"*, 672 F.2d at 1061. "[W]hen the bill of lading expressly

refers to the container as one package, or when the parties fail to specify an alternative measure of the 'packages' shipped, the courts have no choice but to respect their express or implied understanding and to treat the container as a single package." *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1015; *see also Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d at 156 ("Having specified that the press was 'ONE (1)' package, they must abide by its meaning as a word of liability limitation.").

In *Binladen*, the Court of Appeals held that when a bill of lading sets forth the number of containers and does not clearly indicate the number of COGSA packages within the containers, and "the parties have not specified that the shipment is one of 'goods not shipped in packages,'" then the container must be deemed a COGSA package. *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1015–16; *see also Hayes–Leger Associates, Inc. v. M/V Oriental Knight*, 765 F.2d 1076, 1080 (11th Cir.1985) (adopting the holding in *Binladen* ). In so holding, the Court of Appeals stated:

> [W]ithin the constraints of the lower limit on liability set by COGSA, the allocation of risk in shipping is a matter governed by contract, and one best determined by the explicit agreement of the parties. The ability of the shipper and carrier to contract fairly for the division of liability between themselves depends in turn on disclosure of the relevant information about the packaging of the goods being shipped. The shipper retains the power to protect itself by stating in plain terms on the bill of lading the number of COGSA packages being shipped. Any other interpretation would prevent the carrier from accurately assessing its potential liability at the time it contracts to transport the goods.

*Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1016; *see also Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d at 485 ("COGSA implicitly 'cast[s] upon the shipper the burden of declaring the nature and value of the goods, and paying a higher tariff, if necessary, [in order to] impose a higher liability upon the carrier.'") (citation omitted). The carrier should not be expected to assume the risk of liability for the contents or value of goods shipped by container where the carrier has no knowledge of the contents or value because it was not specified on the bill of lading. *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1015.

In *Binladen*, the bill of lading specified the number of live plants in each container. When the plants arrived dead, the shipper claimed that the number of plants as set forth in the bill of lading was the number of COGSA packages. The court found, however, that the plants did not qualify as COGSA "packages." In holding that the container was the COGSA package, the court distinguished the facts before it from the facts in *Mitsui* and *Smythgreyhound* "in which the bill of lading listed not only the number of containers but the number of items *qualifying* as packages." *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1013 (emphasis added). The court held that the container was deemed the COGSA package. It stated, however, that "in view of th[e] uncertainty [in the case law], the parties might have reasonably believed that the description of the number of plants on the bills of lading was sufficient to bring the shipment within the *Smythgreyhound* rule to the effect that a container whose contents are disclosed ... should not itself be treated as a package." *Id.* at 1016. Accordingly, the court stated that its holding was not to be applied retroactively to bills of lading executed prior to the date of the opinion.

The Bill of Lading in this case was issued before the *Binladen* decision. Nevertheless, here, unlike *Binladen*, the shipper could not have "reasonably believed" that the description on the Bill of Lading was "sufficient to bring the shipment within the *Smythgreyhound* rule to the effect that a container whose contents are disclosed ... should not itself be treated as a package."

*Id; see Aluminios Pozuelo Ltd. v. S.S. Navigator,* 407 F.2d at 156.

■ This Bill of Lading expressly refers to the container as a package—it lists "One (1)" container in the column which asks for the number of packages. Stip. ¶ 7, Ex. A. It fails to specify an alternative measure of the number of "packages" shipped, and fails to specify that the shipment is one of "goods not shipped in packages." The entry in the column on the Bill of Lading which asks for a description of package and goods merely states "40' Container ... said to contain drygoods, merchandise divers," without further itemization. *Id.* I conclude that the container is the "package" envisioned by the contract of carriage.

### III.

Even if the contents of the container were deemed "goods not shipped in packages," *see Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d at 821–22 (loose ingots); *Watermill Export, Inc. v. MV "PONCE",* 506 F.Supp. 612, 617 (S.D.N.Y. 1981) (loose potatoes), defendant's liability is still limited to $500. Absent an agreement in the bill of lading, goods placed in containers and described as not separately packaged will be classified as "goods not shipped in packages," for which the $500 liability limit is per "customary freight unit." *FMC Corp. v. S.S. MARJORIE LYKES,* 851 F.2d 78, 80 (2d Cir.1988); *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM",* 759 F.2d at 1013.

The Second Circuit recently announced its definition of "customary freight unit" in *FMC Corp. v. S.S. MARJORIE LYKES,* 851 F.2d at 80. It is "not the standard unit of measure used in the industry, but the actual freight unit used by the parties to calculate freight for the shipment at issue." *Id.; see Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM",* 759 F.2d at 1016; *General Motors Corp. v. Moore–McCormack Lines, Inc.,* 451 F.2d 24, 25–26 (2d Cir.1971) (per curiam); *Eaton Corp. v. S.S. "GALEONA",* 474 F.Supp. 819, 823 (S.D.N.Y.1979).

Where a flat rate is charged per shipping unit, that shipping unit may be the "customary freight unit." *See FMC Corp. v. S.S. MARJORIE LYKES,* 851 F.2d at 80; *General Motors Corp. v. Moore–McCormack Lines, Inc.,* 451 F.2d at 25–26 (affirming decision to limit recovery to $500 for the loss of a generator where the freight charge was based on a flat rate for each power plant shipped, even though an incidental surcharge on the shipment was based on a measurement ton); *Petition of Isbrandtsen,* 201 F.2d 281, 285 (2d Cir. 1953) (recovery limited to $500 per set of locomotive and tender where freight rate was calculated on the basis of each set).

Although in some cases the customary freight unit may be a question of fact, *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM",* 759 F.2d at 1016 (remanded because district court had not made findings as to the customary freight unit), if the tariff and bills of lading are unambiguous, the determination simply "requires interpreting the documents already before the Court in light of the relevant authorities." *Eaton Corp. v. S.S. "GALEONA",* 474 F.Supp. at 827 ("only one customary freight unit within the meaning of COGSA § 4(5) was used in calculating the freight"); *see FMC Corp. v. S.S. MARJORIE LYKES,* 851 F.2d at 80 ("Where there is no ambiguity in either the bill of lading or the tariff, there is no need for the district court to consider any of the parties' earlier negotiations."). In *FMC Corp. v. S.S. MARJORIE LYKES,* the court concluded:

While "a court should look with skepticism at attempts of carriers to limit their liability", we are nevertheless, in the absence of a contrary agreement of the parties expressed in the bill of lading, bound by COGSA to enforce the statutory limit of $500 per customary freight unit. FMC could have declared a higher value than $500 for each unit or it could have insisted that the bill of lading calculate the freight rate based on a different unit. Here it did neither.

We are confident that in the long run relying on the express language in the bill of lading as we do here will "foster

certainty and security in the shipping business."

851 F.2d at 81 (citations omitted).

Plaintiffs here were charged a straight freight rate of $4,800 for the transport of the container from New York to Matadi. Stip. ¶ 13. The freight invoice states: "Transportation effected at the rate of US$ 4800. × 40'." Stip. Ex. C. The rate was based on the $4,800 per 40' container flat rate for "Drygoods, Merchandise Divers," as contained in defendant's tariff on file with the Federal Maritime Commission at the time of booking and shipment. Stip. ¶ 13, Ex. D. Thus, examination of the tariff and Bill of Lading yield the conclusion that the "customary freight unit" under this contract for the goods shipped by plaintiffs is a 40' container. As there is no ambiguity, the parties are bound to the freight unit adopted in the Bill of Lading and tariff. *See FMC Corp. v. S.S. MARJORIE LYKES*, 851 F.2d at 80–81; *Binladen BSB Landscaping v. M.V. "NEDLLOYD ROTTERDAM"*, 759 F.2d at 1016; *General Motors Corp. v. Moore–McCormack Lines, Inc.*, 451 F.2d at 24.

### Conclusion

The COGSA limitation of liability applies. Plaintiffs may recover only $500.

SO ORDERED.