NORWICH UNION FIRE INSURANCE
SOCIETY, LTD., Plaintiff,

v.

LYKES BROS. STEAMSHIP CO.,
INC., Defendant.

No. 89 Civ. 1463 (KMW).

United States District Court,
S.D. New York.

June 15, 1990.

**1052**

David L. Mazaroli, Yorkston W. Grist, P.C., New York City, for plaintiff.

Christopher H. Mansuy, Walker & Corsa, New York City, for defendant.

## OPINION

KIMBA M. WOOD, District Judge.

Defendant moves, and plaintiff cross-moves, for partial summary judgment on the issue whether a clause in defendant's bill of lading limiting its liability to $500 applies in this case. Plaintiff also cross-moves for summary judgment regarding defendant's liability. For the reasons stated below, the Court holds that the liability limitation applies. The Court denies plaintiff's motion for summary judgment regarding defendant's liability.

## FACTS

Defendant Lykes Bros. Steamship Co., Inc. ("Lykes"), a multi-modal common carrier, by a bill of lading dated May 2, 1988, agreed to carry a Combi Aisle Ranger forklift truck (the "cargo") from Felixstowe, England by sea and then overland to a purchaser in Cincinnati, Ohio. Clause 3(a) of the bill of lading provides that the provisions of the Carriage of Goods by Sea

Act, 46 U.S.C.App. § 1300 *et seq.* ("COG-SA") will apply throughout the carriage of the cargo from Felixstowe to its final destination in Cincinnati. Clauses 3(c) and 3(d)(ii) of the bill of lading provide that COGSA will apply to the overland carriage of the cargo. COGSA allows a carrier to limit its liability to $500 per "package," or, for goods not shipped in packages, $500 per "customary freight unit." COGSA § 4(5), 46 U.S.C.A.App. § 1304(5) (West 1975 & Supp.1990). These limitation of liability provisions are set forth in Clause 4 of the bill of lading. Defendant's Notice of Motion for Partial Summary Judgment at Exh. ("Def. Exh.") A; Defendant's Statement of Material Facts Pursuant to Southern District Rule 3(g) ("Def. 3(g) St.") at ¶¶ 9–11, 13.

Lykes carried the cargo, in an open top twenty foot freight container, by ship to Norfolk, Virginia and then by rail to Cincinnati. Def. 3(g) St. at ¶ 4. At the rail yard in Cincinnati, Lykes's subcontractor ASAP Truck Lines ("ASAP") picked up the cargo for carriage by truck to the purchaser's place of business. Def. 3(g) St. at ¶ 5. During this trip, the cargo struck the underside of an overpass on Interstate Route 71 and was severely damaged. Def. 3(g) St. at ¶ 6. Plaintiff Norwich Union Fire Insurance Society, Ltd. ("Norwich") brings this claim, pursuant to the Court's admiralty jurisdiction, as the subrogee of the purchaser and owner of the cargo. Norwich demands damages of $75,000.

## DISCUSSION

Defendant argues that COGSA's limitation of liability provisions apply to this case, and plaintiff is thus limited to damages of $500.

## I. THE DOCTRINE OF DEVIATION

Plaintiff argues that because Lykes charged a higher freight rate for the cargo because it was over standard height, and because the bill of lading noted that the cargo was "overheight," Lykes thereby had assumed a duty of specialized care. Plaintiff argues that defendant unreasonably deviated from its duties to provide specialized care, thereby voiding the limitation of liability clause.

The doctrine of deviation evolved from the pre–COGSA law of marine insurance. When the carrier inexcusably deviated from its contract of voyage, the shipper's insurance on its cargo was often voided. In order to protect shippers in those circumstances, courts developed the rule that an inexcusable geographic deviation prevented the carrier from invoking a limitation of liability clause in the contract of carriage. Later pre–COGSA decisions extended the doctrine of deviation to unauthorized on-deck stowage (quasi-deviation). *See Sedco, Inc. v. S.S. Strathewe,* 800 F.2d 27, 31 (2d Cir.1986); *B.M.A. Industries, Ltd. v. Nigerian Star Line,* 786 F.2d 90, 91 (2d Cir.1986) (*per curiam* ) (discussing evolution of doctrine of deviation).

COGSA, enacted in 1936, did not define deviation; its only reference to deviation is in § 4(4):

> Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *Provided, however,* That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable.

COGSA § 4(4), 46 U.S.C.A.App. § 1304(4) (West 1975 & Supp.1990).

The Second Circuit has limited the doctrine of deviation to instances of geographic deviation and unauthorized on-deck stowage of cargo (quasi-deviation), and has stated that the doctrine should not be extended beyond these categories. *Sedco,* 800 F.2d at 31–32; *see B.M.A. Industries,* 786 F.2d at 91–92; *Italia di Navigazione, S.p.A. v. M.V. Hermes I,* 724 F.2d 21, 22–23 (2d Cir.1983); *Iligan Integrated Steel Mills, Inc. v. S.S. John Weyerhaeuser,* 507 F.2d 68, 71–73 (2d Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975). "[M]ere negligence, lack of due diligence, or a failure to properly handle, stow, care, or deliver cargo never has con-

stituted deviation" that would have the effect of voiding either a contractual or statutory limitation of liability. *Sedco,* 800 F.2d at 32 (*citing Jones v. The Flying Clipper,* 116 F.Supp. 386, 389 (S.D.N.Y. 1953)).

Plaintiff cites *Berisford Metals v. S/S Salvador,* 779 F.2d 841 (2d Cir.1985), *cert. denied,* 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986) and *Elgie & Co. v. S.S. S.A. Nederburg,* 599 F.2d 1177 (2d Cir. 1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980) for the proposition that the doctrine of deviation is not limited to geographic deviation or unauthorized deck stowage. *Berisford Metals* and *Elgie* both held that a carrier cannot limit its liability where the carrier has made false representations in the bill of lading. *See* 779 F.2d at 846–47; 599 F.2d at 1180–81. The rule of *Berisford Metals* and *Elgie* rests upon the "fundamental and vital" role of bills of lading in international commerce. *See Berisford Metals,* 779 F.2d at 845–47. As the Second Circuit stated in *Berisford Metals:* "[w]hether one likens the carrier's issuance of a false bill of lading ... to a 'deviation,' a 'breach of warranty,' or a representation which it must be 'estopped' to deny, its adverse impact on trade and on reliance on bills as an essential method of facilitating trade is serious." 779 F.2d at 846. Here, plaintiff does not assert that defendant made any false representation in the bill of lading; plaintiff asserts only that defendant did not fulfill oral assurances to provide special care for the overheight cargo. According-

ly, plaintiff's reliance upon *Berisford Metals* and *Elgie* is misplaced.

Plaintiff also relies on *Pioneer Import v. The Lafcomo,* 159 F.2d 654 (2d Cir.), *cert. denied,* 331 U.S. 821, 67 S.Ct. 1310, 91 L.Ed. 1838 (1947), which involved an agreement to ship fragile cargo on the ship's deck. The district court had specifically found that the contract of carriage called for the cargo to be covered with tarpaulins. The Second Circuit held that the carrier had "deviated fundamentally from the agreed method of transportation" by failing to cover the cargo with tarpaulins, and thus could not rely on a limitation of liability clause. *Lafcomo,* 159 F.2d at 655.

To the extent that *Lafcomo* stretched the concept of deviation to cover more than geographic deviation and stowage of cargo on-deck where only stowage below deck was authorized,[1] it appears inconsistent with recent Second Circuit precedent. *See Sedco,* 800 F.2d at 32 (in Second Circuit, "the doctrine of deviation has been carefully limited, especially in the last decade.") Moreover, the *Lafcomo* court did not refer to COGSA and its effect on the doctrine of deviation; the decision rested entirely upon pre–COGSA decisions.[2] *See Sedco,* 800 F.2d at 32 (rejecting argument that any carrier conduct amounting to a material breach of the contract of carriage may constitute deviation, distinguishing pre–COGSA cases); *but see Berisford Metals,* 779 F.2d at 848 ("courts in this circuit have long refused to hold that COGSA altered pre–COGSA law with respect to deviation

---

1. Although the decisions treating improper stowage as deviation or quasi-deviation speak of "unauthorized on-deck stowage," which could conceivably extend to a situation where on-deck stowage was authorized only if certain precautions were taken, the Court has found no Second Circuit decisions so extending the concept. Rather, the Second Circuit decisions treating unauthorized on-deck stowage as a deviation or a quasi-deviation dealt with cargo that was to be shipped below deck rather than on-deck. *See, e.g., Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293 (2d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *O'Connell Machinery Co., Inc. v. M/V Americana,* 797 F.2d 1130 (2d Cir.1986); *Thyssen, Inc. v. S.S. Fortune Star* 777 F.2d 57 (2d Cir.1985).

2. Because the parties in *Lafcomo* entered the contract of carriage in November 1939 (*see Pioneer Import Corporation v. The Lafcomo,* 49 F.Supp. 559 (S.D.N.Y.1943), *aff'd.* 138 F.2d 907 (2d Cir.1943)), and because pursuant to COGSA § 15, 46 U.S.C.App. § 1314, the statute took effect in July 1936, it appears that the contract of carriage in *Lafcomo* was governed by COGSA. Nevertheless, plaintiff here has assumed that the *Lafcomo* court was not applying COGSA. Plaintiff's Memorandum of Law at 8; *see Agfa–Gevaert v. S/S TFL ADAMS,* 596 F.Supp. 338 (S.D.N.Y.1984) ("[t]he Court finds [*Lafcomo* ] to be particularly on point, even though that case was not governed by COGSA"). Whether or not the *Lafcomo* court was applying COGSA, its decision is, as noted above, inconsistent with recent Second Circuit precedent.

and other conduct carrying the same consequences").

Plaintiff also cites *Agfa–Gevaert,* where the Court held that defendant carrier's breach of an agreement to refrigerate temperature-sensitive cargo might constitute a deviation voiding the COGSA limitation of liability if plaintiff could show that the carrier's breach was reckless. 596 F.Supp. at 343–44. This holding, however, appears to conflict with recent Second Circuit decisions holding that the doctrine of deviation is not to be extended based upon the carrier's culpability. In *B.M.A. Industries,* the Second Circuit rejected plaintiff's argument that misdelivery be treated as deviation because of alleged criminal bribe-taking by the carrier, noting that the Second Circuit "repeatedly has declined to extend the doctrine of deviation on the basis of culpability or crime." 786 F.2d at 92. *See also Iligan,* 507 F.2d at 72 ("wanton and willful misconduct" of carrier in tendering an unseaworthy ship does not constitute deviation; probing carrier's level of culpability to determine possible deviation would create too much uncertainty).

The Court thus will confine its analysis to whether unauthorized deck stowage (quasi-deviation) or geographic deviation occurred in this case.

### A. *Quasi-deviation*

■ Plaintiff recognizes that because a truck or train does not have a deck, the maritime doctrine of quasi-deviation does not, by its strict terms, apply to overland carriage. Plaintiff argues, however, that the doctrine of quasi-deviation was designed to apply to any actions by the carrier that increase the shipper's risk of loss in carriage, and thus that this Court should extend quasi-deviation to cover Lykes' actions in this case.

Plaintiff cites no Second Circuit authority in support of its argument to expand the doctrine of quasi-deviation to apply to overland carriage. In light of the Second Circuit's strong admonitions to strictly limit the concept of deviation, the Court declines to extend the doctrine of quasi-deviation to Lykes' alleged failure to provide the care appropriate to overheight cargo during the overland portion of the carriage.

### B. *Geographic Deviation*

■ Plaintiff argues that defendant's carriage of the cargo on Interstate 71 constitutes geographic deviation because Interstate 71 is not designed for overheight loads.

Geographic deviation is an unreasonable deviation by the carrier from the customary route. *General Elec. Co. Intern. v. S.S. Nancy Lykes,* 706 F.2d 80, 84 (2d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). Defendant submits an affidavit stating that Interstate 71 is the direct and customary route for the trip from the railway terminal in Cincinnati to the purchaser's place of business. Def. Exh. H at ¶ 5. Plaintiff asserts, however, that because Interstate 71 does not have sufficient height clearance for the cargo as it was loaded onto the standard height truck chassis used by ASAP,[3] Interstate 71 was not the customary route for this trip. Plaintiff also submits an affidavit stating that the route taken by ASAP's driver, which included passing under the bridge that caused the accident, is not the proper route for a load over fourteen feet high. Pl.Exh. 13.

Plaintiff concedes, however, that defendant could have used a special low bed truck chassis for the carrying the cargo. Pl. 3(g) St. at ¶ 15. Plaintiff provides no evidence that Interstate 71 would not be the customary route for the cargo had it been properly stowed on a low bed truck chassis.

Plaintiff's argument is thus an attempt to convert into geographic deviation defendant's apparent failure to properly stow the cargo on a low bed truck chassis. Plaintiff's argument would inappropriately extend carrier liability to any carriage in which the stowage was negligent; for example, it would apply with equal force to a

---

**3.** Plaintiff contends that the cargo was over fourteen feet high when loaded onto ASAP's truck. *See* Affidavit in Support of Plaintiff's Cross–Motion Exh. ("Pl. Exh.") 11.

carrier's negligence in stowing fragile cargo—the carrier would be liable for geographic deviation for taking a bumpy or curvy route that is customary for properly stowed cargo but not customary for improperly stowed cargo. In sum, plaintiff cannot avoid the agreed limitation of liability clause by asking the Court to treat defendant's apparent failure to stow the cargo properly as a geographic deviation.

## II. PRE–EMPTION BY STATE LAW

■ Plaintiff argues that because the ASAP driver violated Ohio vehicular law by carrying a load over thirteen feet six inches high without a permit, the limitation of liability clause is pre-empted by an Ohio statute that provides that any person who violates any vehicular law shall be liable for *all* damages he causes to streets, bridges, and other road facilities. *See* Ohio Rev.Code Ann. § 5577.12.[4] Plaintiff argues that § 5577.12 should be construed to inure to the benefit of private plaintiffs as well as the state, because a similar New York statute, N.Y.Veh. & Traf. Law § 385,[5] has been so interpreted, and the Court should assume that New York common law applies to the Ohio statute.

This argument is without merit. As the language of § 5577.12 makes clear (*see* fn. 6, *supra*), the statute applies only to actions brought for damage to highway structures resulting from a violation of the vehicular laws. Section 5577.12 is simply irrelevant to this case.

■ The Court thus holds that the $500 per package limitation of liability clause in the bill of lading is applicable here. The Court now turns to the question to what unit the $500 limitation of liability applies.

## III. UNIT TO WHICH THE LIMITATION OF LIABILITY APPLIES

■ COGSA provides that:

Neither the carrier nor the ship shall in any event become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ..., or in the case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

COGSA § 4(5), 46 U.S.C.A. § 1304(5) (West 1975 & Supp.1990). Defendant argues that the twenty foot container in which the cargo was shipped is the COGSA package as a matter of law, and thus defendant's liability is limited to $500. Plaintiff argues that because the bill of lading does not properly state the number of packages, the cargo

---

4. Ohio Rev.Code Ann. § 5577.12 provides in relevant part:

Any person violating any law relating to or regulating the use of the improved public roads shall be liable for all damage resulting to any such street, highway, bridge, or culvert by reason of such violation. In case of any injury to such a street, highway bridge or culvert, such damages shall be collected by a civil action, brought in the name of the state, on the relation of the director of transportation with respect to highways under his jurisdiction, and the attorney general or prosecuting attorney of any county shall institute such action, when requested by the director....

5. N.Y.Veh. & Traf. Law § 385 provides in relevant part:

No person shall operate ... any vehicle or combination of vehicles of a size or weight exceeding the limitations provided for in this section.

　　·　　·　　·　　·　　·

2. The height of a vehicle from the underside of tire to top of vehicle, inclusive of load, shall not be more than thirteen and one-half

feet. Any damage to highways, bridges, or highway structures resulting from the use of a vehicle exceeding thirteen feet in height where such excess height is the proximate cause of the accident shall be compensated for by the owner and operator of the vehicle. Under New York common law, violation of a vehicular statute generally constitutes negligence *per se*. *See Tedla v. Ellman,* 280 N.Y. 124, 130–31, 19 N.E.2d 987 (1939). Accordingly, an operator of a vehicle that exceeds the maximum height specified in § 385 will be strictly liable to a private plaintiff for damages proximately caused by the vehicle's excessive height. *Ebasco Services, Inc. v. Pacific Intermountain Exp. Co.,* 398 F.Supp. 565, 567 (S.D.N.Y.1975). However, this result stems from the maximum height limitation in § 385, not from the language in § 385 regarding a violator's liability for damage to road facilities.

must be considered goods not shipped in packages.

Until recently, a cargo container was not considered a COGSA package where the container's "contents and the number of packages or units are disclosed." *Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807, 821 (2d Cir.1981); *see Smythgreyhound v. M/V Eurygenes,* 666 F.2d 746, 750–53 (2d Cir.1981). However, the Second Circuit has recently held that where the bill of lading expressly states the number of containers as the number of packages, the container will be deemed the COGSA package even if the bill of lading also notes the number of units within the container, so long as the units are not referred to as "packages." *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam,* 759 F.2d 1006 (2d Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985). "[W]hen the bill of lading does not clearly indicate an alternative number of packages, the container must be treated as a COGSA package if it is listed as a package in the bill of lading and if the parties have not clearly specified that the shipment is one of 'goods not shipped in packages.'" *Binladen,* 759 F.2d at 1015–1016.

The bill of lading in this case does not state how the Combi Aisle Ranger forklift truck is packaged;[6] accordingly, the bill of lading does not "clearly indicate an alternative number of packages." *See Binladen,* 759 F.2d at 1013 (distinguishing *Mitsui* and *Smythgreyhound,* where "bill of lading listed not only the number of packages but also the number of items qualifying as packages (i.e. connoting preparation in some way for transport, such as 'bundles,' 'cartons,' or the like."). The bill of lading also lacks any notation that the cargo is goods not shipped in packages. *See* Def. Exh. A.

The only remaining question, then, is whether the bill of lading lists the contain-

er as a package. Unlike the bill of lading in *Binladen,* here the column calling for the number of packages is blank. Def. Exh. A. Nonetheless, the bill of lading unambiguously states that the container is the package: the column headed "Description of Package and Goods" states: "1 × 20' open top container said to contain one new combi aisle ranger...." While the number of packages ("1") should have been noted in the "No. of Pkgs." column, and was not,[7] it would exalt form over substance to attach any legal significance to this omission where the package is described as the container elsewhere in the bill of lading. Accordingly, the Court holds that the container is the COGSA package in this case.

▪ In the alternative, even if the container were not viewed as being the COGSA package and the cargo were deemed "goods not shipped in packages," *see Mitsui,* 636 F.2d at 821–22, the $500 limitation on liability would apply to the container in this case. Absent any agreement in the bill of lading, goods placed in containers and not described as separately packaged are considered "goods not shipped in packages," to which the $500 liability limit applies per "customary freight unit." *D.W.E. Corp. v. T.F.L. Freedom,* 704 F.Supp. 380, 385 (S.D.N.Y.1989) (Leval, J.). "Customary freight unit" is defined not as "the standard unit of measure used in the industry, but the actual freight unit used by the parties to calculate freight for the shipment at issue." *FMC Corp. v. S.S. Marjorie Lykes,* 851 F.2d 78, 80 (2d Cir. 1988). Where the bill of lading and the tariff are unambiguous, determination of the "customary freight unit" is a matter of interpreting documents and does not involve questions of fact. *See id.; D.W.E. Corp.,* 704 F.Supp. at 385.

6. Under the heading "Description of Package & Goods," the bill of lading states:
   1 X20' OPEN TOP CONTAINER SAID TO CONTAIN ONE NEW COMBI AISLE RANGER SERIAL NO: 88900 OVERHEIGHT UNIT, DIMS 292 × 150 × 300 CMS
   Def.Exh. A.

7. The typed entries on the printed bill of lading form appear to have been accidentally displaced slightly to the right, so that it appears that the entry "1" was intended to be in the column under the heading "No. of Pkgs." rather than the adjacent column under the heading "Description of Package & Goods."

Here, the bill of lading describes the package and goods as "1 × 20' open top container," states that the shipment is "House/House" and that the applicable "Tariff/Item" number is "07742502." Def. Exh. A. Lykes' tariff sheet lists an item number "0774.250200" corresponding to a rate of $1591.60 "Per 20' Container House/House." The bill of lading and tariff thus unambiguously establish that the actual freight unit used by the parties for the oceangoing portion of the carriage was "per container." Accordingly, the inquiry ends there and the Court may not look to evidence of the parties' negotiations.[8] *Marjorie Lykes*, 851 F.2d at 80–81.

Plaintiff argues that because the tariff rate apparently applied only to the ocean portion of the carriage, there is a question of fact regarding the freight unit for the overland portion of the carriage. Defendant, however, submitted an affidavit stating that the overland carriage rate was computed on a "per container" basis. Davillier Aff. at ¶ 2. Plaintiff has offered no evidence that the freight unit for the overland portion of the carriage was other than "per container." The Court thus holds that there is no genuine issue of fact that the actual freight unit used by the parties for the overland portion of the carriage was "per container." Thus, the customary freight unit for the entire carriage was "per container."

The Court thus holds that defendant's liability is limited to $500 for damage to the one container because the container was the one package or, in the alternative, the one customary freight unit for COGSA purposes. Accordingly, defendant's motion for partial summary judgment is granted.

## IV. PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

■ Plaintiff asserts that there is no genuine issue of fact regarding defendant's liability for the damage to the cargo. Defendant claims that the cause of the accident and damage to the cargo was "highway reconstruction, detour, and lack of cautionary signs," and that the Ohio State Department of Transportation was responsible for the cargo striking the overpass on Interstate 71. Def.Exh. G. While there is substantial evidence in the record that defendant is at fault for the accident, and plaintiff submits a letter from the Ohio Department of Transportation rejecting its liability, Pl.Exh. 16, the evidence offered by defendant is sufficient to create a genuine issue of material fact. On a motion for summary judgment the court's role is not to evaluate the evidence and determine the truth of the matter but to determine if there are any genuine issues of material fact to be tried. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Accordingly, plaintiff's cross motion for summary judgment is denied.

## CONCLUSION

For the reasons stated above, defendant's motion for partial summary judgment is granted and plaintiff's cross motion for summary judgment is denied. By July 3, 1990, the parties shall file their joint pre-trial order and memoranda of law as provided in this Court's Individual Rules of Practice. This case will be put on the Court's Ready Trial Calendar on July 9, 1990.

SO ORDERED.

---

**8.** The parties agree that the $1591.60 per container tariff rate in the applicable tariff list was not the rate actually paid by the shipper; instead the shipper paid $2150 per container for the ocean portion of the carriage. Defendant states that it charged a higher rate because it accidentally applied a tariff rate not yet in effect. Affidavit of Jeffrey J. Davillier, Sept. 19, 1989, at ¶ 4. Plaintiff claims that defendant charged a higher rate because the cargo was overheight. Affidavit of Neal McLean, Sept. 25, 1989, at ¶ 2. However, the reason for the higher rate is not relevant to the Court's holding that the freight *unit* is per container; plaintiff has offered no evidence that any additional charges were computed on a basis other than "per container."